UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARY CURRAN, Individually and on
Behalf of All Others Similarly Situated,

*Plaintiff,*

v.

FRESHPET, INC., RICHARD
THOMPSON, RCHARD KASSAR,
SCOTT MORRIS and CHARLES A.
NORRIS,

*Defendants.*

Civil Action No. 16-2263

OPINION

**THIS MATTER** comes before the Court by way of Defendants Freshpet, Inc. ("Freshpet"), Richard Thompson, Richard Kassar, Scott Morris, and Charles A. Norris's (together, "Defendants") Motion to Dismiss Lead Plaintiff Alaska Electrical Pension Fund's ("Lead Plaintiff") Amended Complaint on behalf of itself and others similarly situated ("Plaintiffs"), ECF No. 28, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 29. For the following reasons, the motion is **DENIED**.

I. **BACKGROUND**

Plaintiffs are purchasers of Freshpet common stock between April 1, 2015 and November 11, 2015 (the "Class Period"). Am. Compl. ¶ 1. Plaintiffs allege that Defendants, a publicly traded company and several of its officers and directors, made misrepresentations in their statements to investors in violation of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, 77o (the "Securities Act") and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j, 78t (the "Exchange Act"). Id. ¶¶ 7-12. Lead Plaintiff seeks to certify a class of stockholders. Id. ¶¶ 13-19.

A. **Freshpet Business Model**

Defendant Freshpet is a manufacturer and marketer of natural fresh foods, refrigerated meals, and treats for dogs and cats. Id. ¶ 20. Freshpet describes its business model as "disrupting the North American pet food industry" by offering healthy, organic alternatives to traditional pet food. Id. ¶ 22. It distributes its products through branded refrigerators, known as "Freshpet Fridges" ("Fridges"), which are placed in retail locations. Id. ¶ 20. Freshpet claimed that its Fridges gave them a competitive advantage in several ways, including guaranteeing Freshpet exclusive shelf space in retail stores and allowing it greater control over its brand identity. Id. ¶ 23. Plaintiffs allege that Freshpet's growth strategy is therefore directly linked with its ability to install new Fridges in retail stores. Id. ¶ 24. These retailers include Petco, PetSmart, Target, and Walmart. Id. ¶¶ 33-51. At the beginning of the Class Period, Freshpet reported that it had installed 14,019 Fridges in stores. Id.

**B. Allegedly Misleading Statements**

Plaintiffs allege that throughout the Class Period, Freshpet experienced issues with its largest customers and most popular products, which ultimately stunted the growth of its Fridges. Plaintiffs allege that despite being aware of these issues in early 2015, Defendants failed to disclose them until their November 2015 earnings report.

Freshpet made its initial public offering in November 2014, and subsequently filed its annual financial report on Form 10-K for the period ending December 31, 2014 on March 31, 2015. Id. ¶¶ 79, 110. That same day, Freshpet issued a press release and held a conference call to discuss its earnings release and operations. Id. ¶ 112. On the call, individual Defendants provided details regarding Freshpet's outlook for the year, including statements about the growth of Freshpet Fridges. Id. They specifically stated, "For full-year 2015, we expect Freshpet Fridges in the range of 15,100 to 15,600," and "we are very confident that we are going to be where we

need to be by the end of the year." Id. ¶¶ 113-14. Following the March 31, 2015 call, the price of Freshpet common stock rose to a Class Period high of $25.46 on April 9, 2015. Id. ¶ 116.

Freshpet subsequently filed a registration statement in connection with its Secondary Offering (the "Registration Statement") on April 13, 2015. Id. ¶¶ 20, 25. The Registration Statement included guidance about the expected growth of Fridges (i.e. "We have successfully expanded our network of Freshpet Fridges within leading blue-chip retail chains . . . we believe there is an opportunity to install a Freshpet Fridge in at least 35,000 stores across North America."). Id. ¶ 51. Plaintiffs allege that Freshpet insiders and Defendants collectively sold 6.1 million shares of their personally held common stock in the Secondary Offering, earning gross proceeds of $131.1 million. Id. ¶ 154.

Defendants reiterated this guidance in their August 11, 2015 earnings call. Id. ¶¶ 124-32. Defendant Kassar stated that he projected "net sales, excluding Freshpet Baked test product, to be in the range of $112 million to $114.5 million, representing an increase of 29% to 32% compared to 2014." Id. ¶ 129. Also on August 11, Freshpet disclosed that its gross margin gains throughout the rest of 2015 were likely to be more modest than contemplated and were forecasted to come in 100 to 200 basis points below prior forecast for the year. Id. ¶ 132. In addition, the Company predicted it would be closer to the low end of its guidance for Fridge placement. Id. Plaintiffs allege that these statements caused analysts to lower their earnings per share ratings for Freshpet. Id. On August 12, 2015, the price of Freshpet common stock declined $0.87 per share, to close at $13.73 per share. Id. ¶ 133.

On November 11, 2015, Freshpet issued a press release announcing its financial results for the third quarter of 2015, updating its previous guidance to note challenges to its business. Id. ¶ 133. Specifically, Defendants stated:

> We experienced lower than expected Freshpet Fridge growth and our gross margin was negatively affected by manufacturing inefficiencies from new product innovation and the near term cost of adjusting processes on our primary products.

Id. ¶ 135. Defendants noted, "production capabilities including the production throughput of our new Freshpet Shredded product has been lower than originally projected," "we now expect Freshpet Fridges in the range of 14,900 to 15,000," and "[i]n the third quarter, our production rates were significantly lower than we had ever projected." Id. ¶¶ 137-39.

Plaintiffs allege that following the November 2015 disclosures, Freshpet was downgraded by several analysts. Id. ¶¶ 144-48. The price of Freshpet subsequently fell to $6.28 per share on November 12, 2015, the end of the Class Period. Id. ¶ 149.

Plaintiffs allege that Defendants "artificially inflated" the price of Freshpet common stock during the Class Period by publicly stating materially false and misleading statements throughout 2015 about its "manufacturing, operations, forecasts, and business prospects." Id. ¶¶ 156-57. Plaintiffs allege that they suffered losses from the decline in the common stock price of Freshpet after Defendants disclosed the truth about the company to the public in November 2015. Id.

Plaintiffs specifically allege that Defendants misled investors about Freshpet's growth potential by failing to disclose material information with respect to: (1) Freshpet's ability to expand its Fridges in retail locations, including stores such as Target, BJ's, A&P, and Haggen; (2) difficulties producing Freshpet's baked product line at the forecasted profit margin stemming from a factory fire that halted production for two weeks; (3) and production problems with Freshpet's shredded product line stemming from the frequent break down of manufacturing equipment. Id. ¶¶ 86-108.

4

Plaintiffs seek damages for violations of the Securities Act Sections 11, 12(a)(2) and 15, and the Exchange Act Sections 10(b) and 20(a). Id. ¶¶ 58-78, 165-70. Defendants move to dismiss all counts for failure to state a claim.

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. However, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In addition to the customary pleading requirements under Rule 8, plaintiffs must meet the heightened pleading requirements under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA") for Exchange Act claims sounding in fraud. See City of Edinburgh, 754 F.3d at 168. To allege fraud under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). At a minimum, "plaintiffs [must] support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of a newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004) (citation omitted).

**III. DISCUSSION**

**A. Exchange Act Claims**

In a securities fraud action, to state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." City of Edinburgh Council v. Pfizer, Inc., 754 F.3d 159, 167 (3d Cir. 2014). "A corporation is liable for statements by employees who have apparent authority to make them." Inst. Invs. Grp. v. Avaya, Inc., 564 F.3d 242, 251 (3d Cir. 2009) (internal citation omitted).

Here, Defendants assert that Plaintiffs have failed to show the first, second, and sixth elements of a 10-b(5) claim, namely (1) a material misrepresentation or omission by Defendants, (2) scienter, and (3) loss causation. The Court disagrees.

1. PSLRA Safe Harbor

Defendants first argue that the allegedly misrepresentative statements all qualify for immunity under the PSLRA safe harbor for forward-looking statements. See 15 U.S.C. § 78u-5(c). Plaintiffs counter that despite the forward-looking nature of some of the statements, they do not fall under the PSLRA safe harbor because they contain omissions of present fact. The Court agrees.

The PSLRA's safe harbor provision, 15 U.S.C. § 77z-2, "immunizes from liability any forward-looking statement, provided that: the statement is identified as such and accompanied by meaningful cautionary language; or is immaterial; or the plaintiff fails to show the statement was made with actual knowledge of its falsehood." Avaya, 564 F.3d at 254. However, this safe harbor provision does not apply to a "'mixed present/future statement . . . with respect to the part of the

6

statement that refers to the present.'" Id. at 255 (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc., 513 F.3d 702, 705 (7th Cir. 2008)). As such, "to the extent plaintiffs [] challenge defendants' alleged omission of present facts with respect to the challenged statements, PSLRA's safe harbor does not apply." Mallen v. Alphatec Holdings, Inc., 861 F. Supp.2d 1111, 1126 (S.D. Cal. 2012) (concluding that defendants' statements that the company had "already begun to realize synergies from the Scient'x acquisition" and "we anticipate that our revenues throughout the balance of 2010 *will continue to grow*" were not protected by the PSLRA safe harbor for "forward-looking" statements, but dismissing the case on other grounds); see also In re Majesco Securities Litig., 2006 WL 2846281, at *4 (D.N.J. Sept. 29, 2006) (noting "allegations based upon omissions of existing facts or circumstances do not constitute forward-looking statements protected by the safe harbor") (quoting In re MobileMedia Securities Litig., 28 F. Supp. 2d 901, 930 n.18 (D.N.J. 1998)).

Defendants are correct that many of the allegedly misleading statements are forward-looking, because they predict future Fridge placement. But a number of these statements encompass representations of present fact, and those representations are not subject to the PSLRA safe harbor. These statements include: (1) "We expect continued demand for our Freshpet Fridges;" (2) "The store count is obviously growing;" (3) "We are also pleased with our initial test of Freshpet's new baked product;" and (4) "we have enhanced our strategic manufacturing infrastructure capabilities at our Freshpet Kitchens." These statements incorporate representations about current Fridge growth and Freshpet's current manufacturing capacity.

Similarly, Plaintiffs primarily allege that Defendants' statements are misleading by virtue of omission of existing facts. Plaintiffs claim that Defendants omitted facts about their Fridge-placement and sales problems at major retailers, as well as manufacturing problems affecting the

7

production of its shredded and baked products during their March and August 2015 earnings calls. See id. ¶¶ 117, 134. Representative statements made during the calls include: (1) "We continue to expect to install approximately 2,000 Freshpet fridges in new store locations each year. Long-term, we believe 35,000 store locations are achievable;" (2) For full-year 2015, we expect Freshpet fridges in the range of 15,100 to 15,600; (3) "For the full year 2015, I'll reiterate our previously disclosed guidance. We continue to expect Freshpet Fridges in the range of 15,100 to 15,600;" (4) "We are also pleased with our initial test of Freshpet's new baked product;" (5) "in order to keep up with demand and support our fantastic sales growth . . . . we are upsizing much of the equipment in phase two to provide increased capacity;" and (6) "we took advantage of a unique opportunity to purchase a 60,000 square foot building on 6.5 acres directly adjacent to our current Freshpet Kitchens location in Bethlehem, Pennsylvania." Id. ¶¶ 112-13, 126-29.

Reading Defendants' statements in context, and construing all inferences in Plaintiffs' favor, the Court finds that Plaintiffs have adequately alleged that Defendants made actionable misleading statements about their ability to grow Fridge placement across North American retailers in their March and August 2015 earnings calls. Plaintiffs have plausibly alleged that Defendants misled investors by suggesting that Freshpet was able to continue to place Fridges at the same rate of growth as it had experienced between 2011 and 2014, when Defendants knew by early 2015 that Freshpet was facing substantial obstacles that would impede the growth of its Fridges. Plaintiffs allege that Defendants were aware of Freshpet's problems with major retailers as early as March 2015 because: (1) "in the beginning of 2015," individual Defendants Kassar and Morris received production updates from Freshpet's Bethlehem facility reflecting the alleged manufacturing problems with Freshpet's shredded product; (2) throughout the Class Period, retailers PetSmart, BJ's, and Walmart had expressed concerns about the products; (3) A&P filed

8

for bankruptcy in the first half of 2015 while Target closed all 133 Canadian stores in April 2015. Plaintiffs allege these issues with specificity. For example, the Amended Complaint details the origins of the manufacturing problems, alleging that Freshpet was using production equipment such as rotators that were not designed to manufacture shredded product. Am. Compl. ¶ 104. "As a result, Freshpet was replacing manufacturing equipment at a faster rate than anticipated." Id.

Plaintiffs allege that the problems only continued throughout the year. By August 2015, Defendants had been presented with more evidence that it could not meet the 15,100 to 15,600 Fridge placement projection. With respect to Freshpet's baked product, they allege that due to manufacturing issues, including a fire at Freshpet's Baxter Springs facility on July 6, 2015, "the profit margin for the baked product was significantly lower than Freshpet's original expectations." Id. ¶ 108. They allege that "in the first half of 2015," Freshpet was on the verge of being fined by Walmart for not being able to keep its products in stock, thereby limiting its growth opportunities at the store. Id. ¶ 107. The company was also fined by BJ's in the summer of 2015 for not maintaining sufficient frozen products. Id. ¶ 100.

The omission of any information with respect to challenges with retailers and manufacturing problems was material and misleading because that omission led investors to believe that Freshpet was on track to meet its predicted Fridge growth for the year 2015 of 15,100 to 15,600. In fact, as Defendants later revealed, their Fridge placement for the year would fall several hundred below the original guideline range. Indeed, by November 2015, Freshpet had only placed a total of 14,670 Fridges. Am. Compl. ¶ 135.

The Court's reading of these statements is further bolstered by analysts' comments during the earnings calls, indicating that they understood Defendants' statements to reflect current growth. For instance, during the August 2015 call, an analyst asked, "you describe first quarter definitely

9

ahead of your plan. Second quarter you said you were happy with the results. Is it fair to say that the first half of the year is ahead of plan as you originally had it be?"

Accordingly, Defendants' statements in the March and August 2015 earnings calls, taken in light of the overall context in which they were made, are not subject to the PSLRA safe harbor for forward-looking statements because they (1) incorporated misleading representations of present fact, and/or (2) were made misleading by material omissions.[1]

2. Scienter

Defendants next contend that even if the allegedly misrepresentative statements are not protected by the PSLRA Safe Harbor, they are still inactionable because Plaintiffs have failed to allege that they were made with a strong inference of scienter. The Court disagrees.

The Third Circuit has established that in an Exchange Act matter, plaintiffs may establish the requisite scienter in one of two ways. "They may either allege facts that establish that defendants had the motive and opportunity to commit fraud, or they may set forth facts that constitute circumstantial evidence of reckless or conscious misbehavior." In re Great Atlantic and Pacific Tea Co., 103 Fed. App'x 465, 468-69 (3d Cir. 2004). Where, as here, the alleged fraud is based on non-disclosure of facts, "evidence that the defendants had actual knowledge of the facts is sufficient to show scienter." Id. (citing GSC Partners CDO Fund v. Washington, 368 F.3d 228, 237-38, (3d Cir. 2004)).

Here, Plaintiffs properly allege scienter based on Defendants' conscious decision to omit presently known facts. As discussed above, Plaintiffs have alleged that Defendants had extensive

---

[1] Because the Court finds that Plaintiffs have pled misrepresentations based on omissions of material information, it does not consider whether Defendants' forward-looking statements were accompanied by sufficient cautionary language.

10

information about difficulties facing their largest customers, as well as challenges meeting demand due to manufacturing problems. See supra Section III(A)(1).

Plaintiffs have pled such knowledge with particularity. Especially compelling are their allegations that in the beginning of 2015, Defendants Kassar and Morris were presented with production updates from the Bethlehem production facility that reflected manufacturing problems with the shredded product. These manufacturing problems allegedly included the frequent breakdown of the equipment used to produce the shredded product. As discussed above, Plaintiffs allege that Defendants were also aware that the manufacturing issues affected their ability to expand their Fridges because customers such as Walmart and BJ's had reprimanded Freshpet in the first half of 2015 about its failure to keep their products sufficiently stocked in their stores. In addition, the Amended Complaint details countless examples of financial troubles at Freshpet's leading customers, including the closure of Target's Canadian stores, A&P's bankruptcy, and declining growth at Petco and PetSmart.

Plaintiffs have also pled Defendants' motive and opportunity to commit fraud. "Though it is not necessary to plead motive to establish that a defendant acted with scienter, its presence can be persuasive when conducting a holistic review of the evidence." Rahman v. Kid Brands, Inc., 736 F.3d 237, 245 (3d Cir. 2013) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 325-26 (2007)). Here, Plaintiffs have pled motivation. They allege that Individual Defendants timed their Secondary Offering at just below Freshpet's peak price. After Freshpet announced its first annual results on March 31, 2015, the price of its stock rose to the Class Period high of $25.46 on April 9, 2015. The next day, Individual Defendants filed a Registration Statement that allowed them to sell their own shares, reaping proceeds of $131 million. Accordingly, Plaintiffs have alleged motive.

Defendants' arguments that Plaintiffs have not sufficiently alleged scienter are unavailing. In Tellabs, the Supreme Court instructed lower courts to "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." 551 U.S. at 323. But "the inference . . . need not be irrefutable, i.e. of the "smoking-gun" genre, or even the most plausible of competing inferences." Id. (quotations omitted). Here, Plaintiffs have provided a theory that Defendants omitted material information to inflate the Freshpet stock price, allowing them to profit after the Secondary Offering. Defendants, however, have not provided the Court with any cogent non-fraudulent inference that is more compelling than the inferences of fraud alleged by Plaintiffs.

Defendants also contend that Plaintiffs have failed to allege that Defendants were aware of the materiality of any specific omitted fact on Freshpet's growth projections. Defs.' Opp'n at 20. But the proper inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter." Avaya, 564 F.3d at 269 (quoting Tellabs, 127 S.Ct. at 2509)). Here, Plaintiffs have alleged that Plaintiffs were aware of manufacturing issues and retailer issues from the beginning of 2015, such that the inclusion of these facts would have presented a materially different outlook for the company's growth to a reasonable investor.

Finally, Defendants also dispute many of the allegations, denying Freshpet's strained relationship with BJ's, the stagnation of its growth at Petco and PetSmart, and the discovery of low profit margins for its baked product. Defs.' Opp'n at 20-21. But at the motion to dismiss stage, the Court is obliged to accept all factual allegations in the Complaint as true. In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig., No. 08-2177, 2009 WL 2855601, at *4 (D.N.J. Sept. 2, 2009) (denying dismissal for lack of scienter where "the inference of scienter created by Plaintiffs' allegations is at least as compelling as any other plausible inference that be drawn.").

Accordingly, the Exchange Act claims cannot be dismissed at this time for failure to plead scienter.

3. Loss Causation

Defendants also dispute whether Plaintiffs have sufficiently alleged loss causation. The PSLRA requires a plaintiff to allege that a defendant's act or omission "caused the loss" for which he seeks to recover. 15 U .S.C. § 78u–4(b)(4); see also McCabe v. Ernst & Young, LLP, 494 F.3d 418, 426 (3d Cir.2007) ("In order to satisfy the loss causation requirement ... the plaintiff must show that the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss"). An allegation that the value of a stock declined following the public announcement of "bad news" does not, by itself, demonstrate loss causation. In re Tellium, Inc. Sec. Litig., No. 02–5878, 2005 WL 2090254, at *4 (D.N.J. Aug.26, 2005) ("loss causation is not pled upon allegations of drops in stock price following an announcement of bad news that does not disclose the fraud"). Rather, a plaintiff must allege "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." Lentell v. Merrill Lynch, 396 F.3d 161, 173 (2d Cir.2005). Allegations of loss causation are not subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. Dura Pharms, Inc. v. Broudo, 544 U.S. 336, 348 (2005). The issue of loss causation is usually not resolved on a motion to dismiss. EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 884 (3d Cir. 2000) ("Whether the plaintiff has proven [loss] causation is usually reserved for the trier of fact.").

Here, the Amended Complaint sufficiently pleads loss causation with respect to the alleged omissions on the March and August earnings calls. Plaintiffs assert that on April 9, 2015, there was a 31% increase in Freshpet's stock price to $25.46 per share as a result of the company's

13

announcement on March 31, 2015 predicting that Freshpet Fridges will be in 15,100 to 15,600 stores by year end. Am. Compl. ¶¶ 112-16. Plaintiffs allege that Freshpet's stock price was artificially inflated at that time because it was based on a "misleading picture of Freshpet's manufacturing, operations, forecasts, and business prospects." Id. ¶ 157. Plaintiffs allege that on August 11, 2015, Freshpet disclosed that its gross margin gains throughout the rest of 2015 would be more modest than it had predicted earlier in the year, and pointed to the lower end of its 15,100 to 15,600 Fridge range. Id. ¶ 132. In response to the news, Freshpet stock fell 6% to a close of 13.73 on august 12, 2015. Id. ¶ 133. Finally, Plaintiffs allege that when Freshpet finally revealed its manufacturing and retailer issues on November 11, 2015, its stock price fell 25% to close at $6.28 on November 12, 2015. Id. ¶ 149.

Therefore, the Exchange Act claims cannot be dismissed for failure to plead loss causation. Because the Court finds that Plaintiffs have sufficiently pled Exchange Act claims, it cannot dismiss the derivative Section 20 claim against individual Defendants at this time.

**B. Securities Act**

Section 11 of the Securities Act permits recovery by purchasers of securities where "a registration statement, as of its effective date: (1) contained an untrue statement of material fact; (2) omitted to state a material fact required to be stated therein; or (3) omitted to state a material fact necessary to make the statements therein no misleading." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 269 (3d Cir. 2006) (internal quotations omitted). It is a "virtually absolute liability provision[], which do[es] not require plaintiffs to allege that defendants possessed any scienter. Id. (quoting In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 274 n.7 (3d Cir. 2004)).

Plaintiffs allege that Defendants omitted information about Freshpet's sales and Fridge placement issues, as well as its manufacturing issues from its April 30, 2015 Registration

14

Statement in violation of Item 303. Am. Compl. ¶¶ 32-57. Representative statements include: (1) "We have successfully expanded our network of Freshpet Fridges within leading blue-chip retail chains including Albertsons, BJ's, Kroger, Petco, PetSmart, Publix, Safeway, Target, Wal-Mart and Whole Foods;" (2) "we believe there is an opportunity to install a Freshpet Fridge in at least 35,000 stores across North America;" (3) "We believe there is a significant opportunity to continue to grow our network of Freshpet Fridges by expanding within the store base of existing and new customers;" and (4) "Over the next three years, we plan to install over 6,000 Freshpet Fridges in new retail locations." Id.

Defendants first argue that several of the alleged statements[2] are inactionable statements of opinion. Defs.' Opp'n at 28. The Court disagrees. In <u>Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund</u>, the Supreme Court held that a statement of opinion is subject to omissions liability under the second clause of Section 11 if a plaintiff can plead particular material facts underlying the opinion, the omission of which made the opinion misleading "to a reasonable person reading the statement fairly and in context." 135 S. Ct. 1318, 1332 (2015). Plaintiffs have sufficiently pled such an omission here. They allege that at the time of the Registration Statement, manufacturing and retailer problems had already affected Freshpet's ability to expand its fridge growth. As such, their statements that they believe that Freshpet could expand by 6,000 Fridges over the next few years, with an opportunity to ultimately install 35,000 Fridges in North America were misleading.

---

[2] E.g. "We believe there is an opportunity to install a Freshpet Fridge in at least 35,000 stores across North America;" "We believe our Freshpet Fridges generate compelling economics," "We believe there is a a significant opportunity to continue to grow our network of Freshpet Fridges." Am. Compl. ¶¶ 51-52.

Next, Defendants argue that the Registration Statement is protected by the PSLRA Safe Harbor for forward-looking statements. The Court finds that for the reasons stated above (see supra Section III(A)(1)), Plaintiffs have sufficiently pled a violation based on the omission of known facts. Therefore, the statements are not protected by the PSLRA Safe Harbor.

Finally, Defendants contend that Plaintiffs failed to satisfy the pleading standard for claims based on a violation of Item 303. The Court disagrees. Item 303 requires registrants to "describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303. A registrant must "describe any unusual or infrequent events or transactions or any significant economic change that materially affected the amount of reported income from continuing operations." To bring a claim pursuant to the Securities Act based on an Item 303 violation, a plaintiff must allege that the defendant had actual knowledge of of the alleged undisclosed relevant rent or uncertainty. See Indiana Pub. Ret. Sys. V. SAIC, Inc., 818 F 3d 85, 95 (2d Cir. 2017). Plaintiffs have done so here. As discussed above, reading Defendants' statements in context, and construing all inferences in Plaintiffs' favor, they have alleged that by April 2015, Defendants were aware of the manufacturing and retailer issues that would impede Freshpet's ability to expand Fridge placement. Accordingly, Plaintiffs' claims based on violations of Item 303 cannot be dismissed.

Because the Court finds that Plaintiffs have sufficiently pled Securities Act claims, it cannot dismiss the derivative Section 15 claim against individual Defendants at this time.

**IV. CONCLUSION**

For the reasons set forth above, Defendants Freshpet, Inc., Richard Thompson, Richardf Kassar, Scott Morris and Charles A. Norris' Motion to Dismiss, ECF No. 28, is **DENIED**. An appropriate Order accompanies this Opinion.

**Dated: January 9, 2018**

>  <u>*/s Madeline Cox Arleo*</u>
> **Hon. Madeline Cox Arleo**
> **UNITED STATES DISTRICT JUDGE**