# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GARY CURRAN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>FRESHPET, INC., et al.,<br><br>     Defendants. | Civil Action No. 16-2263(MCA)(LDW) |

-------------------------------------------------------------------------------------------------------------------

### BRIEF IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

-------------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
 OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
(973) 994-1700

Liaison Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

Samuel H. Rudman
Alan I. Ellman
Avital O. Malina
ROBBINS GELLER RUDMAN
 & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
(631) 367-7100

Lead Counsel for Lead Plaintiff

# TABLE OF CONTENTS

**Page**

I.  THE STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES IN COMMON FUND CASES ..............................................................................................4

    A.  Lead Plaintiff's Counsel Are Entitled to a Fee From the Common Fund They Created ........................................................................................................4

    B.  The Court Should Award Attorneys' Fees Using the Percentage Approach ..........5

II.  THE REQUESTED FEE IS FAIR AND REASONABLE .................................................6

    A.  The Size and Nature of the Common Fund Created and the Number of Persons Benefited by the Settlement ......................................................................7

    B.  The Absence of Objections by Settlement Class Members to the Fee Request ...................................................................................................................8

    C.  The Skill and Efficiency of Lead Plaintiff's Counsel .............................................8

    D.  The Complexity and Duration of the Litigation .....................................................9

    E.  The Risk of Non-Payment ....................................................................................10

    F.  The Significant Time Devoted to This Case by Lead Plaintiff's Counsel .............13

    G.  The Requested Fee Is Within the Range of Fees Typically Awarded in Actions of This Nature .........................................................................................13

III.  THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK ...........................................................................................................................15

IV.  LEAD PLAINTIFF'S COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED ............................16

V.  LEAD PLAINTIFF IS ENTITLED TO AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) .................................................................................................................17

VI.  CONCLUSION .............................................................................................................18

# TABLE OF AUTHORITIES

Page

## CASES

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995)..................................................................................16

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ..................................................................................2

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985).................................................................................................4

*Blum v. Stenson*,
  465 U.S. 886 (1984).................................................................................................5

*Bodnar v. Bank of Am., N.A.*,
  No. 14-3224, slip op. (E.D. Pa. Aug. 4, 2016)......................................8, 13, 15, 16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).............................................................................................4, 5

*Cent. R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885).................................................................................................4

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)..............................................................................8

*Dartell v. Tibet Pharms., Inc.*,
  2017 U.S. Dist. LEXIS 100872 (D.N.J. June 29, 2017) ................................5, 7, 9

*Esslinger v. HSBC Bank Nev., N.A.*,
  2012 U.S. Dist. LEXIS 165773 (E.D. Pa. Nov. 20, 2012)...............................13, 16

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)......................................................................... *passim*

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).............................................................................................7, 15

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)........................................................18

*Hoffman Elec., Inc. v. Emerson Elec. Co.*,
  800 F. Supp. 1279 (W.D. Pa. 1992).......................................................................10

**Page**

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..............................................................................12

*In re Aetna Inc. Sec. Litig.*,
2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ...............................................................16

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010).....................................................................12

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ............................................................................6, 8

*In re AT&T Corp. Sec. Litig.*,
2005 WL 6716404 (D.N.J. Apr. 25, 2005),
*aff'd*, 455 F.3d 160 (3d Cir. 2006) ........................................................................8

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)...................................................................................5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)..........................................................................3, 6, 8

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005)...................................................................................6

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009)...................................................................................4

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)........................................................................5, 6, 13

*In re Ikon Office Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).....................................................................5, 9, 10, 13

*In re Lupron Mktg. & Sales Practices Litig.*,
2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) ....................................11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................18

*In re MGM Mirage Sec. Litig.*,
No. 2:09-cv-01558-GMN-VCF, slip op. (D. Nev. Mar. 1, 2016)...........................18

**Page**

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................18

*In re Oracle Corp. Sec. Litig.*,
   2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009),
   *aff'd*, 627 F.3d 376 (9th Cir. 2010) ....................................................................12

*In re PAR Pharm. Sec. Litig.*,
   2013 U.S. Dist. LEXIS 106150 (D.N.J. July 29, 2013) ........................................14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ...................................................................................6

*In re Rite Aid Corp. Sec. Litig.*,
   362 F. Supp. 2d 587 (E.D. Pa. 2005) ....................................................................16

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ...........................................................................14, 15

*In re Schering-Plough Corp.*,
   2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012) ..........................................11

*In re Schering-Plough Corp.*,
   2013 U.S. Dist. LEXIS 147981 (D.N.J. Aug. 28, 2013) ........................................17

*In re Veeco Instruments Sec. Litig.*,
   2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007) ........................................15

*In re Veritas Software Corp. Sec. Litig.*,
   396 F. App'x 815 (3d Cir. 2010) ...........................................................................14

*In re ViroPharma Inc. Sec. Litig.*,
   2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ...................................*passim*

*In re Xcel Energy, Inc.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ....................................................................12

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) .................................................................................................4

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's,
   London Members*,
   2019 WL 4877563 (D.N.J. Oct. 3, 2019) .................................................................9

Page

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
    487 F.2d 161 (3d Cir. 1973)................................................................................................15

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976)................................................................................................15

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)..............................................................................................................4

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010)............................................................................................................12

*P. Van Hove BVBA v. Universal Travel Grp.*,
    2017 U.S. Dist. LEXIS 97909 (D.N.J. June 26, 2017) ............................................................5

*Schuler v. Meds. Co.*,
    2016 U.S. Dist. LEXIS 82344 (D.N.J. June 24, 2016) .................................................. *passim*

*Schwartz v. Urban Outfitters, Inc.*,
    2016 U.S. Dist. LEXIS 181235 (E.D. Pa. Oct. 31, 2016).......................................................13

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939)..............................................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................................4

*W. Pa. Elec. Emps.' Pension Fund v. Alter*,
    No. 2:09-cv-04730-CMR, slip op. (E.D. Pa. Aug. 4, 2014) ..................................................13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4 ................................................................................................................... *passim*
    §78u-4(a)(4) .........................................................................................................1, 17, 18
    §78u-4(a)(6) ..............................................................................................................6

**SECONDARY AUTHORITIES**

1 Alba Conte,
    *Attorney Fee Awards* (2d ed. 1993)
    §2.02...............................................................................................................................5

**Page**

Janeen McIntosh & Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*,
  (NERA Economic Consulting Jan. 21, 2020) ..........................................................................14

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
  108 F.R.D. 237 (Oct. 8, 1985) ...............................................................................................5

## I.      INTRODUCTION

Lead Plaintiff's Counsel have succeeded in obtaining a $10,100,000 cash settlement for the benefit of the Settlement Class.[1]  This is a very good result in the face of substantial risk and is a credit to Lead Plaintiff's Counsel's vigorous, persistent, and skilled efforts.  Lead Counsel respectfully moves this Court for an award of attorneys' fees in the amount of 30% of the Settlement Amount and payment of litigation expenses in the amount of $456,411.38, plus interest on both amounts.  In addition, Lead Plaintiff, Alaska Electrical Pension Fund ("Lead Plaintiff"), seeks an award of $9,360 pursuant to 15 U.S.C. §78u-4(a)(4) for its representation of the Settlement Class.[2]

The requested fee is within the range of percentages awarded in class actions in this District and Circuit, as well as in numerous decisions throughout the country, and is the appropriate method of compensating counsel.  Indeed, "'awards of thirty percent are not uncommon in securities class actions.'"  *In re ViroPharma Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 8626, at *52 (E.D. Pa. Jan. 25, 2016) (citation omitted) (awarding 30% of an $8 million settlement).  The amount requested is especially warranted in light of the recovery obtained for the Settlement Class, the extensive efforts of counsel in obtaining this result, and the significant risks in bringing and prosecuting this Litigation.[3]  Absent this Settlement, continued litigation through class certification, summary

---

[1]    All terms used herein are defined in the Stipulation of Settlement dated October 2, 2019 ("Stipulation") (ECF No. 137-2), unless otherwise indicated.

[2]    *See* Declaration of Gregory Stokes in Support of Lead Plaintiff's Motion for Final Approval of the Settlement and Plan of Allocation and for Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C §78u-4(a)(4), ¶¶8-9 ("Stokes Decl."), submitted herewith.

[3]    Submitted herewith in support of approval of the Settlement is the Brief in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Approval of Plan of Allocation (the "Settlement Brief").  In addition, the attention of the Court is respectfully invited to the accompanying Declaration of Alan I. Ellman in Support of: (1) Lead Plaintiff's Motion for Final

judgment, trial, and appeals would have likely taken several more years at considerable expense without the Settlement Class receiving the benefits of the Settlement, thus creating the very real risk that the Settlement Class could ultimately receive less, or even no recovery.

This action has been vigorously litigated for nearly four years. It was undertaken by Lead Plaintiff's Counsel on a wholly contingent basis and was extremely risky and difficult from the outset. The Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The effect of the PSLRA is to make it harder for investors to bring and successfully resolve securities class actions. Lead Plaintiff and its counsel were mindful of the fact that in this post-PSLRA environment, a greater percentage of cases are being dismissed than ever before, amid defendants' constant attempts to push the envelope and contents of the PSLRA. As the Fifth Circuit noted: "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

In addition to the significant risks of success, the effort required to achieve this Settlement was substantial. As set forth in more detail in the Ellman Declaration and the Settlement Brief, the Settlement was achieved only after Lead Plaintiff's Counsel had, *inter alia*: (i) conducted an extensive investigation relating to the claims asserted in the Litigation; (ii) interviewed third parties possessing information concerning the subject matter of the Litigation; (iii) researched applicable law governing the claims alleged and potential defenses thereto; (iv) prepared and filed detailed complaints; (v) successfully opposed Defendants' motion to dismiss the Amended

---

Approval of Settlement and Approval of the Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C §78u-4(a)(4) ("Ellman Decl."), for a more detailed description of the history of the Litigation, an overview of the claims asserted, the investigation undertaken by counsel, discovery, expert reports, the negotiation of the Settlement, and the substantial risks of the Litigation.

Complaint; (vi) fully briefed Lead Plaintiff's motion for class certification; (vii) completed fact discovery, including the review and analysis of approximately 800,000 pages of documents produced by Defendants and non-parties and the depositions of 17 fact witnesses; (viii) exchanged expert reports and initiated expert discovery; and (ix) engaged in extensive arm's-length settlement negotiations, including mediation with Michelle Yoshida of Phillips ADR Enterprises.  Ellman Decl., ¶3.

Lead Plaintiff's Counsel firmly believe that the Settlement is the result of their creative and diligent efforts, as well as their reputations as attorneys who are unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals.  In a case asserting claims based on complex legal and factual issues that were opposed by highly skilled and experienced defense counsel, Lead Plaintiff's Counsel succeeded in securing a favorable result for the Settlement Class under difficult and challenging circumstances.

As important, the requested fees have been approved by the Court-appointed Lead Plaintiff. *See* Stokes Decl., ¶7.  Lead Plaintiff has evaluated the request for fees and expenses and has come to the conclusion that the requested fees are warranted based on Lead Counsel's diligent and aggressive prosecution of the Litigation.  *Id.*  As a result, the fee request is entitled to a "presumption of reasonableness."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001); *accord ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *46-*47 ("Where the Lead Plaintiff approves the Lead Plaintiff's counsel's request fee award – as Lead Plaintiff does here – the Court should afford the fee requested a presumption of reasonableness.").

For all the reasons set forth herein, in the Ellman Declaration, and in the Settlement Brief, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards and therefore, should be awarded by the Court.

## II.     THE STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES IN COMMON FUND CASES

### A.     Lead Plaintiff's Counsel Are Entitled to a Fee From the Common Fund They Created

It is well-settled that an attorney who maintains a lawsuit that results in the creation of a fund or benefit in which others have a common interest may obtain fees from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund ensure that "'competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citation omitted); *Schuler v. Meds. Co.*, 2016 U.S. Dist. LEXIS 82344, at *25 (D.N.J. June 24, 2016).  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Courts in this Circuit have consistently adhered to these teachings.  *See, e.g.*, *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *46 ("'The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys'

fees.'") (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995) ("*GMC Trucks*")); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

The ultimate determination of the proper amount of attorneys' fees, of course, rests within the sound discretion of the district court. *Gunter*, 223 F.3d at 195; *GMC Trucks*, 55 F.3d at 821; *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 168-69 (3d Cir. 2006).

**B.     The Court Should Award Attorneys' Fees Using the Percentage Approach**

The Supreme Court has also consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fees should be determined as a percentage of the fund. *See, e.g.*, *Boeing*, 444 U.S. at 478-79. Indeed, by 1984, this point was so well established that the Supreme Court needed no more than a footnote to address it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). *See also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same).

The Third Circuit and district courts within it have repeatedly approved the percentage-of-recovery method of awarding fees in common fund securities fraud cases. *See, e.g.*, *AT&T*, 455 F.3d at 164 ("In common fund cases such as this one, the percentage-of-recovery method is generally favored."); *Dartell v. Tibet Pharms., Inc.*, 2017 U.S. Dist. LEXIS 100872, at *19 (D.N.J. June 29, 2017) ("The percentage-of-recovery method is preferred in common fund cases because it 'rewards counsel for success and penalizes it for failure.'") (citation omitted); *P. Van Hove BVBA v. Universal*

*Travel Grp.*, 2017 U.S. Dist. LEXIS 97909, at *28 (D.N.J. June 26, 2017) (same); *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *46 (same).  In *Cendant*, the Third Circuit noted "[f]or the past decade, counsel fees in securities litigation have generally been fixed on a percentage basis rather than by the so-called lodestar method."  264 F.3d at 220.  In *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit stated "[t]he percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  *Id*. at 333 (citation omitted); *see also Schuler*, 2016 U.S. Dist. LEXIS 82344, at *25 ("When calculating attorneys' fees in common-fund cases such as this one, the percentage-of-recovery method is generally favored."); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002) ("the percentage-of-recovery method is used in common fund cases on the theory that class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund").

Additionally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6) (emphasis added).  Thus, "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable."  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005).

## III.    THE REQUESTED FEE IS FAIR AND REASONABLE

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common fund cases.  *See, e.g., Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."); *GMC Trucks*, 55 F.3d at 821.

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider, "among other things," the following factors in determining a fee award, including: the size of the fund created and the number of persons benefited; the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; the skill and efficiency of the attorneys involved; the complexity and duration of the litigation; the risk of non-payment; the amount of time devoted to the case by plaintiffs' counsel; and the awards in similar cases. *Gunter*, 223 F.3d at 195 n.1. These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Id.*; *Schuler*, 2016 U.S. Dist. LEXIS 82344, at *26.

### A.  The Size and Nature of the Common Fund Created and the Number of Persons Benefited by the Settlement

For this factor, courts "'consider the fee request in comparison to the size of the fund created and the number of class members to be benefitted.'"  *Dartell*, 2017 U.S. Dist. LEXIS 100872, at *21 (citation omitted).

Lead Plaintiff's Counsel have secured a settlement that provides for a substantial and certain cash payment of $10,100,000, plus interest for the benefit of the Settlement Class.  Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *48.

Moreover, the number of persons benefited is undeniably large, since the Settlement Class includes all Persons who purchased or otherwise acquired the common stock of Freshpet between April 1, 2015 and November 11, 2015, inclusive ("Settlement Class Period"), and were allegedly damaged thereby.  There were millions of shares of Freshpet common stock traded during the Settlement Class Period.  It is therefore reasonable to conclude that hundreds of Settlement Class

- 7 -

Members will participate in and benefit from this Settlement.

**B.**     **The Absence of Objections by Settlement Class Members to the Fee Request**

Notice of this Settlement and Lead Counsel's fee request was provided to over 15,600 potential Settlement Class Members.  *See* Murray Decl., ¶11.  To date, not a single objection has been filed to any aspect of the Settlement.  This is significant, as the Settlement Class includes sophisticated institutional investors with financial stakes in the Litigation substantial enough to warrant an objection to the fee request.  Indeed, as the Third Circuit has noted, "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."  *Cendant*, 264 F.3d at 235.

**C.**     **The Skill and Efficiency of Lead Plaintiff's Counsel**

It took a great deal of skill to achieve what counsel achieved for the benefit of the Settlement Class.  Lead Plaintiff's Counsel's efforts in bringing this action to such a successful conclusion are the best indicator of the experience and ability of the attorneys involved.  *AremisSoft*, 210 F.R.D. at 132 ("'the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)); *see also Bodnar v. Bank of Am., N.A.*, No. 14-3224, slip op. at 9 (E.D. Pa. Aug. 4, 2016).  By any measure, Lead Plaintiff's Counsel's efforts have resulted in a highly favorable outcome for the benefit of the Settlement Class.  The substantial and certain recovery obtained for the Settlement Class is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions.[4]   Lead

---

[4]     Lead Counsel are highly competent lawyers who possess substantial experience in prosecuting complex securities class actions in this Circuit and throughout the country, and Robbins Geller has successfully prosecuted hundreds of securities class actions on behalf of damaged investors.  *See*

Plaintiff's Counsel's reputations as attorneys who will zealously carry a meritorious case through the trial and appellate stages as well as their demonstrable ability to vigorously develop the evidence in this Litigation enabled them to negotiate the outstanding recovery for the benefit of the Settlement Class.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by plaintiffs' counsel. *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Dartell*, 2017 U.S. Dist. LEXIS 100872, at *23 ("'The quality and vigor of opposing counsel' is relevant when evaluating the quality of services rendered by Lead Counsel."). Defendants were represented by attorneys from Pepper Hamilton LLP, a prominent law firm with undeniable experience and skill. The ability of Lead Plaintiff's Counsel to obtain such a favorable settlement for the Settlement Class in the face of such formidable legal opposition further confirms the superior quality of Lead Plaintiff's Counsel's representation.

### D. The Complexity and Duration of the Litigation

There can be no dispute regarding the overall complexity and duration of this securities class action. This action involved complex legal and factual issues under the federal securities laws. While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. Lead Plaintiff's Counsel addressed numerous case-determinative issues in opposing Defendants' motion to

---

*In re AT&T Corp. Sec. Litig.*, 2005 WL 6716404, at *9 (D.N.J. Apr. 25, 2005) ("Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization."), *aff'd*, 455 F.3d 160 (3d Cir. 2006); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *3 (D.N.J. Oct. 3, 2019) (noting that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action").

dismiss, and there was no guarantee that those claims would survive the application of the heightened pleading standards of the PSLRA. In *Ikon*, the court noted: "[t]here were the legal obstacles of establishing scienter, damages, [and] causation . . . . The court also acknowledges that securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA. . . . The Act imposes many new procedural hurdles . . . . It also substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs." 194 F.R.D. at 194-95. The court's statement in *Ikon* is certainly applicable here.

This action has been vigorously prosecuted and defended for nearly four years. At nearly every stage of the action, counsel for Defendants have aggressively defended this Litigation and expressed their belief that Lead Plaintiff's claims would not prevail. They have challenged falsity, scienter, and loss causation (Ellman Decl., ¶17), and if successful on even one of these elements, the recovery would drop to zero. Even if Lead Plaintiff prevailed on summary judgment and was successful against Defendants at trial, Lead Plaintiff's efforts to establish liability and damages in the Litigation in all likelihood would not end with a judgment in the district court, but would continue through one or more levels of appellate review. In complex and substantial cases such as this, it must be recognized that even a victory at the trial stage does not guarantee ultimate success. Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *51 ("'Here, the trial, as . . . all securities fraud trials, will be long and complex . . . . Thus, the complexity, expense and duration of the litigation weigh in favor of settlement.'") (quoting *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 800 F. Supp. 1279, 1285 (W.D. Pa. 1992)).

### E.   The Risk of Non-Payment

Lead Plaintiff's Counsel undertook this action on a contingent-fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated. Unlike

counsel for Defendants, who are paid an hourly rate and paid their expenses on a regular basis, Lead Plaintiff's Counsel have not been compensated for any time or expense since this case began in 2016.  Since that time, Lead Plaintiff's Counsel have expended over 10,800 hours in the prosecution of this Litigation and incurred $456,411.38 in litigation expenses.  Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.  "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp.*, 2012 U.S. Dist. LEXIS 75213, at *19 (D.N.J. May 31, 2012).

Even though Lead Plaintiff's claims cleared the pleading stage, it still faced significant hurdles in prevailing on summary judgment and class certification.  As set forth in more detail in the Settlement Brief and Ellman Declaration, at summary judgment, Defendants would dispute that they made any materially false and misleading statements.  Indeed, Defendants steadfastly maintained that they did nothing wrong and were prepared to offer evidence to support their position.  Assuming the Court granted Lead Plaintiff's motion for class certification and Lead Plaintiff was able to overcome Defendants' likely motion(s) for summary judgment, and prove liability at trial, it still would have faced significant risks.  Because of the complex nature of loss causation and damages, expert testimony is almost always necessary.  The damage assessments of the parties' respective experts at trial would be polar opposites and the determination of the amount, if any, of damages suffered by the Settlement Class at trial would have turned into a "battle of the experts."  Lead Plaintiff realized that in the inevitable "battle of experts," the jury could side with Defendants' expert(s) and find no damages or only a fraction of the damages Lead Plaintiff claimed.  *See In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *16 (D. Mass. Aug. 17, 2005) ("History is replete with cases in which plaintiffs prevailed at trial

on issues of liability, but recovered little or nothing by way of damages.") (collecting cases).

Indeed, the risk of no recovery for the class and counsel in complex cases of this type is very real.  There are scores of hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.  *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million).

As the court in *Xcel* recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Even plaintiffs who successfully oppose summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  The Eleventh Circuit in *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), upheld a lower court's decision overturning a jury verdict because plaintiff did not present sufficient evidence to prove loss causation.  Similarly, even the most promising multi-hundred million dollar cases can be eviscerated by a sudden change in the law after years of litigation.  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  This factor strongly favors approval of the requested fee.

### F.  The Significant Time Devoted to This Case by Lead Plaintiff's Counsel

To date, Lead Plaintiff's Counsel and their paraprofessionals have expended over 10,800 hours and incurred $456,411.38 in expenses prosecuting this Litigation for the benefit of the Settlement Class.[5]  As discussed above and in the Ellman Declaration, this Litigation has been extensively litigated and vigorously defended for nearly four years.  Defendants fought Lead Plaintiff at nearly every step of the Litigation in an effort to defeat Lead Plaintiff's claims.  The successful conclusion of this Litigation required Lead Plaintiff's Counsel to commit a significant amount of time and expenses to the action.

### G.  The Requested Fee Is Within the Range of Fees Typically Awarded in Actions of This Nature

There is no hard and fast rule as to what percentage of the common fund should be awarded as attorneys' fees.  The Third Circuit has observed that fee awards range from 19% to 45% of the settlement fund.  *GMC Trucks*, 55 F.3d at 822; *see also Ikon*, 194 F.R.D. at 194.  Indeed, numerous courts within the Third Circuit have awarded fees of 30% or more of the recovery.  *See Schwartz v. Urban Outfitters, Inc.*, 2016 U.S. Dist. LEXIS 181235, at *6 (E.D. Pa. Oct. 31, 2016) (awarding 30% of $8.5 million fund); *Bodnar*, slip op. at 10 (awarding 33% of $27.5 million fund);

---

[5]  *See* Declaration of Alan I. Ellman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Award of Attorneys' Fees and Expenses ("Lead Counsel Decl."); Declaration of James E. Cecchi in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses; and Declaration of Michael I. Fistel, Jr. Filed on Behalf of Johnson Fistel, LLP in Support of Application for Award of Attorneys' Fees and Expenses (collectively, "Fee Declarations"), submitted herewith.

*ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at \*66-\*67 (awarding 30% of $8 million fund); *Esslinger v. HSBC Bank Nev., N.A*., 2012 U.S. Dist. LEXIS 165773, at \*43 (E.D. Pa. Nov. 20, 2012) ("a fee award of 30% of the [$23.5 million] settlement here is reasonable and in keeping with similar precedent"); *W. Pa. Elec. Emps.' Pension Fund v. Alter*, No. 2:09-cv-04730-CMR, slip op. at 1(E.D. Pa. Aug. 4, 2014) (court awarded 30% of $13.25 million settlement); *In re PAR Pharm. Sec. Litig*., 2013 U.S. Dist. LEXIS 106150, at \*30 (D.N.J. July 29, 2013) (court awarded 30% of an $8.1 million settlement to counsel noting that "Lead Counsel's fee request is comparable to fees typically awarded in analogous cases"); *In re Veritas Software Corp. Sec. Litig*., 396 F. App'x 815 (3d Cir. 2010) (Third Circuit affirmed the 30% award of a $21.5 million settlement by the district court).

The requested fee is also consistent with the median fee award for securities cases based on a recent analysis of fee awards conducted by NERA. Using data from securities class actions from 2010 through 2019, the study found that for settlements of $10 million, the median fee award was 30% of the settlement amount. *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* at 25, Fig. 17 (NERA Economic Consulting Jan. 21, 2020). Moreover, the requested fee is within the range of three studies relied on by the district court in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005). As the Third Circuit noted in *Rite Aid*:

> In comparing this fee request to awards in similar cases, the District Court found persuasive three studies referenced by Professor Coffee: one study of securities class action settlements over $10 million that found an average percentage fee recovery of 31%; a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period that found a median percentage recovery range of 27-30%; and a third study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were "fairly standard." We see no abuse of discretion in the District Court's reliance on these studies.

*Id.* at 303 (citation omitted).

- 14 -

Accordingly, the application of the *Gunter* factors makes clear that Lead Plaintiff's Counsel's requested fee of 30% of the Settlement Amount is fair and reasonable.

## IV.   THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK

Although courts in this Circuit almost uniformly apply the percentage approach to determine attorneys' fees in common fund cases like this one, a court may, but is not required to, use a lodestar "cross-check" to confirm the reasonableness of the requested fee.[6]  In this case, if the cross-check is applied, the requested fee of 30% is clearly fair and reasonable.

The lodestar method, as set forth in the seminal cases *Lindy I* and *Lindy II*, is a two-step process.  *See Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973) ("*Lindy I*"), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*) ("*Lindy II*").  The first step requires that the court ascertain the "lodestar" figure by multiplying the number of hours reasonably worked by the reasonable normal hourly rate of counsel.

The lodestar may be adjusted by applying a multiple to take into account the contingent nature and risks of the litigation, the results obtained and the quality of the services rendered by counsel.  *See Lindy I*, 487 F.2d at 167-68; *accord Hensley*, 461 U.S. 424.  A multiplier "'need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award.'"  *Schuler*, 2016 U.S. Dist. LEXIS 82344, at *30 (quoting *Rite Aid*, 396 F.3d at 307).

The cumulative lodestar for the services performed by counsel and their paraprofessionals in this Litigation is $6,191,289.50.  Lead Plaintiff's Counsel are seeking an award of 30% of the

---

[6]   "Even if such a cross-check is performed, 'the lodestar cross-check does not trump the primary reliance on the percentage of the common fund method.'"  *Bodnar*, slip op. at 10 (citing *Rite Aid*, 396 F.3d at 307).

Settlement Fund which equals $3,030,000. Therefore, the requested fee represents a negative multiplier to counsel's time of 0.49. *See ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *54 (where lodestar multiplier was 0.90, "[t]he lodestar cross-check confirms that the percentage-of-recovery method produces an appropriate recovery"); *see also In re Veeco Instruments Sec. Litig.*, 2007 U.S. Dist. LEXIS 85554, at *31-*32 (S.D.N.Y. Nov. 7, 2007) ("Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar."). A negative "multiplier" is well below multipliers applied in other securities cases and is additional evidence that the requested fee is reasonable. *See Bodnar*, slip op. at 10 (a 4.69 multiplier was "appropriate and reasonable"); *Esslinger*, 2012 U.S. Dist. LEXIS 165773, at *49 (a 1.7 multiplier was acceptable "because of the high risk of non-recovery shouldered by Plaintiffs' counsel, who worked on a contingency basis, for more than two years"). Further, multipliers of 3 or more times the lodestar have been awarded to reflect the contingency fee risk and other relevant factors. *See Schuler*, 2016 U.S. Dist. LEXIS 82344, at *31 (approving 3.57 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (6.96 multiplier); *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001) (3.6 multiplier). Thus, a 30% fee, using a lodestar cross-check, is plainly reasonable.

## V.   LEAD PLAINTIFF'S COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Lead Counsel also requests payment of expenses incurred in connection with the prosecution of this Litigation in the aggregate amount of $456,411.38. Counsel have submitted separate declarations attesting to the accuracy of their expenses. Counsel in a class action are entitled to recover expenses that were "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *54 (quoting *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

A significant component of Lead Counsel's expenses are the cost of experts and consultants. Due to the complexity and specialized nature of the factual issues in this case, it was necessary for Lead Counsel to consult highly qualified experts in the areas of market efficiency, loss causation and damages.  These experts were critical to helping support Lead Plaintiff's case.  Ellman Decl., ¶¶27-28.

Lead Plaintiff's Counsel were also required to travel in connection with this Litigation and thus incurred the related costs of meals, lodging, and transportation.  Lead Plaintiff's Counsel in this case traveled to appear before the Court for hearings, participate in depositions, and to attend mediation.  Lead Plaintiff's Counsel also incurred the costs of computerized factual and legal research services, including LexisNexis, Westlaw, PACER, and Thomson Financial.  These services are standard practice for attorneys and allowed counsel to access Freshpet's SEC filings, perform media searches on Freshpet, assist in developing Lead Plaintiff's damage analyses, and allowed the investigators to locate and obtain information on witnesses and Defendants.

Other expenses that were necessarily incurred in the prosecution of this Litigation include expenses for mediation fees, court reporters, photocopying and imaging costs, filing and witness fees, postage and overnight delivery charges, and telephone and telecopier expenses.  Because these were all necessary expenses incurred by Lead Plaintiff's Counsel, they should be paid from the Settlement Fund.

## VI.    LEAD PLAINTIFF IS ENTITLED TO AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4)

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *See* 15 U.S.C. §78u-4(a)(4). "The Third Circuit favors encouraging class representatives, by appropriate means, to create common funds and to enforce laws – even approving 'incentive

awards' to class representatives." *In re Schering-Plough Corp.*, 2013 U.S. Dist. LEXIS 147981, at

*174 (D.N.J. Aug. 28, 2013).   Lead Plaintiff requests payment of $9,360.   As set forth in the

accompanying Stokes Declaration, Lead Plaintiff participated in this Litigation by (a) engaging in

numerous meetings, phone conferences and correspondence with Lead Counsel; (b) reviewing

pleadings and briefs; (c) collecting documents for production; (d) preparing for and attending a

deposition; (e) providing input regarding litigation and settlement strategy; and (f) keeping apprised

of the mediation and settlement negotiations.   Stokes Decl., ¶5.   These are precisely the types of

activities that courts have found to support awards to lead plaintiffs, and, in fact, courts "routinely

award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through

their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs

to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley*,

2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *see also In re MGM Mirage Sec. Litig.*, No.

2:09-cv-01558-GMN-VCF, slip op. at 2 (D. Nev. Mar. 1, 2016); *In re Marsh & McLennan Cos.,

Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $214,657 to the lead

plaintiffs in the action "to compensate them for their reasonable costs and expenses incurred in

managing this litigation and representing the Class"); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036,

1049 (N.D. Cal. 2007) (finding it "appropriate to reimburse Lead Plaintiffs [a total of $29,913.80 to

the four Lead Plaintiffs] for their reasonable costs and expenses").   The request by Lead Plaintiff is

supported by a sworn declaration, including a description of the hours directly dedicated to the

Litigation.   Lead Plaintiff's request is reasonable, fully justified under the PSLRA, and should be

granted.

## VII.   CONCLUSION

For all of the foregoing reasons, Lead Counsel respectfully requests that the Court award

attorneys' fees of 30% of the Settlement Amount and expenses in the amount of $456,411.38, plus

interest at the same rate as earned by the Settlement Fund, and $9,360 to Lead Plaintiff pursuant

to 15 U.S.C. §78u-4(a)(4) based on its representation of the Settlement Class.

DATED:  January 29, 2020                    Respectfully submitted,

                                            CARELLA, BYRNE, CECCHI,
                                            OLSTEIN, BRODY & AGNELLO, P.C.
                                            Liaison Counsel for Lead Plaintiff


                                            By:          /s/ James E. Cecchi
                                                         JAMES E. CECCHI

Samuel H. Rudman
Alan I. Ellman
Avital O. Malina
ROBBINS GELLER RUDMAN
   & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
(631) 367-7100

Lead Counsel for Lead Plaintiff

Frank J. Johnson
JOHNSON FISTEL, LLP
655 West Broadway, Suite 1400
San Diego, CA  92101
(619) 230-0063

Michael I. Fistel, Jr.
JOHNSON FISTEL, LLP
40 Powder Springs Street
Marietta, GA  30064
(470) 632-6000

Additional Counsel for Lead Plaintiff